# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BARBARA J. VICTOR,                    )
                                      )
        Plaintiff,                )
                                      )
        v.                        )     No. 13 C 00921
                                      )
VILLAGE OF HOFFMAN ESTATES,           )     Judge John J. Tharp, Jr.
                                      )
        Defendant.                )

## MEMORANDUM OPINION AND ORDER

Barbara Victor brings claims of age discrimination and retaliation against her employer, the Village of Hoffman Estates. She alleges that her hours were reduced because of her age, 57 at the time, and that she was retaliated against for complaining about discrimination. The Village now moves for summary judgment. For the reasons explained below, the motion is granted.

## FACTS[1]

Barbara Victor was born on July 7, 1951. In August 1998 the Village hired Victor, then 47 years of age, as a part-time Staffing Specialist in the Human Resources Management ("HRM") Department. Throughout the relevant portions of her tenure there, she was supervised

---

[1] The Court notes the Village's argument that the plaintiff's submissions pursuant to Local Rule 56.1 do not always strictly comply with that rule. However, rather than strike individual responses or additional fact statements, the Court simply disregards any fact statement or purported dispute—of either party—that is not properly supported with citations to record evidence. Moreover, despite the plaintiff's contention that there is no prohibition on making arguments within the Local Rule 56.1 submissions, the Court declines to address any argument that does not also appear in the parties' memoranda of law. Finally, objections "to the extent that" or "insofar as" a statement is based on hearsay or is otherwise inadmissible have been ignored; such objections are not sufficiently particularized to permit the Court to identify or assess the purportedly inadmissible evidence.

by Mary Frances Hardt, the Human Resources Coordinator, and Patrick Seger, the Director of the HRM Department. John Norris was the Village Manager.

Within months of being hired, Victor's hours were increased from 20 to 25 hours per week. On May 10, 2004, the Village reclassified Victor's position to full-time, increasing her hours to 37.5 hours per week. Effective January 1, 2007, Victor's position was reclassified again, this time changing the title to HR Generalist and increasing the hours to 40 per week, with an increased hourly pay rate. According to Victor's supervisors, Seger and Hardt, a large portion of Victor's duties were related to recruiting. Seger estimated such duties accounted for 60-65% of Victor's work, and Hardt made an estimate of 50-60%. Victor's own estimate is that only about 40 to 50% of her time was spent on duties that were specifically listed in her official job description, including recruiting duties, and that the rest of her time was spent performing a wide range of other duties, including assisting with benefits administration, creating and updating job descriptions, and updating the Personnel Policy manual, among others.

Over the course of 2008 and the first half of 2009, the Village shifted some of Victor's duties to D'Ann Granger, another employee in the HRM Department who was younger and, according to Victor, less qualified. Granger, who was born on February 2, 1968,[2] was hired by

_____

[2] Granger, the "younger" employee whom Victor claims was favored, was herself a member of the protected class (workers over age 40) when Victor's hours were reduced in 2009. But "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). "The fact that one person in the protected class has lost out to another person in the protected class is... irrelevant, so long as he has lost out *because of his age.*" *Id.* at 312 (emphasis in original). Because she is more than 10 years younger than Victor, Granger is "substantially younger" for

the Village in 2004 as a part-time Administrative Staff Assistant. Her hours were increased in 2006 to 25 per week, and again to 30 hours per week in 2007. In 2007, Seger recommended that Granger be made a full-time employee, but his request was denied for budgetary reasons. The following year, Seger made the same request, this time suggesting that Granger could absorb some of the hours of Laura Kurht, a retiring part-time employee of the Police Department, at a net savings to the Village.[3] Seger stated that Granger was working with the police department on union contract negotiations and that the Chief of Police agreed to the increase in Granger's hours. Norris approved Seger's request, and Granger became a full-time employee effective November 1, 2008. She remained an Administrative Staff Assistant and retained the same hourly rate of pay.

In 2008, the Village's Finance Director alerted management that revenues were below projected levels and there would be a budget shortfall. The Village took steps to balance the budget without eliminating any staff. The Village then adopted a new budget for 2009, but early that year it became apparent that revenues were continuing to decline. Because 80% of the budget consisted of employee compensation, the Village decided to reduce the workforce. The Village offered voluntary separation packages to encourage employees to leave voluntarily, identified some positions that could be eliminated, and laid off a number of employees. In total,

---

purposes of the ADEA. *See Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486, 493 (7th Cir. 2008); *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 659 (7th Cir. 2001).

[3] Victor contends that Granger never actually performed any duties for the police department that formerly were Kurht's, but she does not dispute that no replacement for Kurht was hired, resulting in net savings to the Village even after adding 10 hours per week to Granger's position.

by 2011 the Village had reduced its 2008 employee count by 56.4 full time equivalent and 7.43 part-time equivalent positions.

Because of the budget shortfalls, the volume of recruiting and hiring slowed down significantly in 2008 and early 2009. The Village determined that it did not have the need for a full-time employee with a primary role of recruiting and hiring. Seger therefore recommended reducing Victor to part-time status. Norris inquired whether Victor's position could be eliminated altogether, but Seger recommended against it because Victor had other work she could perform until hiring increased again. Norris decided to reduce Victor's 40-hour workweek to 20 hours. Victor contends that a Village was required to prepare a rank-order list in considering this action; the "layoffs" provision of the Personnel Policy Manual provides: "In the event it becomes necessary to lay off employees in a Department, HRM shall with the Director, prepare a rank order list of employees for layoff" according to enumerated criteria.[4] The Village, however, determined that its policy did not require preparation or consideration of a rank order list because there was no "layoff" in the HRM Department, just a reduction in hours.

Victors' hours reduction and other mid-2009 staff cuts were incorporated into a mid-year budget reduction plan that the Village Board approved in June 2009; the reduction in Victor's hours would take effect on July 1, 2009. At that time, every employee in the HRM Department, including Granger and Victor, was over 40 years old.

---

[4] The same provision also states that "[r]eductions may occur through the phase out of positions, attrition, transfers, reduced hours, or other work schedule options that does not [sic] adversely impact service delivery."

The Village never considered reducing Granger's work hours or eliminating her position. Nor did the Village consider reducing Granger's hours and giving some of her work to Victor. In 2009 Granger was performing duties relating to the Village's employee unions, and it was expected that her workload would increase. In Seger's opinion, Granger was performing valuable analysis of data in this area and preparing sophisticated spreadsheets. Victor formerly performed salary surveys to use in union negotiations, entering data from other communities into a Word document, but she had not done so since 2007; at the time her hours were reduced she was not performing any work related to the negotiation of union contracts or the union grievance and arbitration process. Seger and Hardt did not think Victor could do this work as well as Granger (Victor disagrees vehemently with their opinion). Although she was not working with the unions, Victor still had plenty of duties and was performing a full 40 hours' worth of work per week.

The Village Manager, Norris, formally notified Victor of the reduction in her hours by letter dated June 19, 2009. The letter explained that her hours would be reduced to 20 per week "due to current economic conditions, a Village budget shortfall of nearly three million dollars and a direct, significant decline in your position's recruiting activity." Victor was notified of the reduction by letter because she was absent on Friday, June 12, 2009, the date on which Seger had scheduled a meeting to inform Victor of the decision in person. Earlier that week, Victor had gotten wind of upcoming changings by looking at the department's shared electronic calendar and seeing a list of names, including hers, with meetings scheduled with Seger on June 12 related to "succession planning." Victor had approached Hardt, her immediate supervisor, to ask if she was going to be laid off. Hardt informed Victor that she would not be laid off but would not give her any further information. Victor asked if she could get the details before the meeting

scheduled for Friday June 12, but she was told she would have to wait until then. But Victor did not go to work on June 12, 2009, because of the emotional trauma and distress caused by her supervisors' refusal to discuss her employment situation with her (two days) sooner. This emotional distress precipitated a long medical leave; Victor never returned to work in the HRM department. She exhausted all of her sick time, which extended her leave through February 2010. In the meantime, she arranged a transfer to another department. When she returned, Victor began a part-time position as a Data Processor in the Department of Public Works. She retained the reduced 20-hour workweek and her same hourly pay rate. Victor remains in this job.

On June 12, 2009, the first day of her medical leave, Victor filed a grievance claiming that Seger and Hardt had "harassed" her and "retaliated against" her by refusing to meet with her before June 12 as she had requested. She then amended this grievance to clarify her claim that the harassment by Hardt and Seger was retaliation against her for having raised a question in 2007 about merit increases after a male employee was given a large raise. Victor's question had resulted in a city-wide policy change that made more employees eligible for merit increases; Seger dubbed this reform the "Barb Victor policy," which made Victor very uncomfortable.

After her June 2009 grievance, Victor—who had previously filed only one complaint during her decade-long tenure in the HRM Department—filed, and escalated through the various levels of review, a bevy of other grievances over the course of the next several years, all asserting that she had been harassed or subjected to discrimination or retaliation. The subjects of these grievances included: (1) a comment by Hardt, that Hardt describes as a joke, that if Victor was late coming back from lunch, they would have to "break her arm"; (2) the Village's refusal to reimburse Victor for mileage and her breakfast at a staff meeting held at the International

House of Pancakes; (3) the Village's refusal to allow Victor to take a skills test for another position during her work hours and refusal to allow her to use a car from the Village fleet to travel from her work station to Village Hall to interview for the job and take a test. These grievances were investigated and found by the Village to be lacking merit. In his memorandum to Victor concerning the skills-test grievance, Norris determined that the grievance was unfounded and, in closing, wrote: "Finally, just as the Village does not tolerate discrimination in the workplace, it does not tolerate false or malicious complaints. Barb, this is a gentle reminder to you that such complaints are subject to appropriate disciplinary action pursuant to the manual." Victor considered that statement to be a retaliatory threat of punishment for her grievance, but she continued to avail herself of the grievance policy to complain about harassment and discrimination.

The Village did not hire another Human Resources Generalist, part-time or full-time, to replace Victor after she unexpectedly ceased working in the department in June 2009. According to Seger, "Because Victor did not work in the HRM Department [after June 2009], the duties that it was anticipated she would perform in her 20 hours per week as a part-time Human Resources Generalist were either reassigned to the other staff, principally Hardt and Granger, canceled, or delayed."

Effective January 1, 2012, on Hardt's recommendation and with the approval of Seger and Norris, Granger's position was reclassified from Administrative Staff Assistant to Human Resources Specialist. On January 6, 2012, Victor filed a grievance asserting that the Village had discriminated against her by failing to post the position of Human Resources Specialist. Norris determined that Village policy did not require the posting of a job reclassification and informed

Victor that her allegations of retaliation and discrimination were unfounded. (Victor's own HRM positions had previously been reclassified without public posting). In his February 6, 2012, memorandum to Victor, Norris wrote: "Again I remind you that false and malicious complaints are subject to appropriate disciplinary action pursuant to the manual." A similar statement was included in a memo of August 3, 2012, in which Norris informed Victor that he was denying her grievance of age discrimination and retaliation in connection with a denial of her request for a schedule change. Victor continued to file grievances, including about what she considered to be rude or hostile treatment by her supervisor in Public Works, individuals who interviewed her for other positions, and someone who investigated one of her grievances.

On April 6, 2012, Victor wrote on her performance evaluation (which she was required to review and sign) that in "calendar year 2011" she was "the victim of sexual harassment policy as defined on Page 29 and 30 and Appendix A of the personnel policy manual." Assistant Corporation Counsel Patricia Cross investigated the grievance of sexual harassment even though Victor's counsel subsequently clarified that Victor was not alleging harassment of a sexual nature but meant to refer to her numerous prior grievances pursuant to a general anti-harassment policy. Victor would not consent to an interview in connection with Cross's investigation or to provide any written statement beyond her prior written grievances. After Cross found no evidence of sexual harassment, and with Victor unwilling to provide any further information, Norris issued a written reprimand to Victor pursuant to the Village policy prohibiting false or malicious claims of harassment.

While working as a Data Processor in the Public Works Department, Victor applied for full-time positions in other departments. On December 21, 2012 (after this lawsuit had been

filed), Victor applied for the position of Administrative Staff Assistant in the Code Enforcement and Water Billing Department. She was interviewed by a panel consisting of Sue Wenderski, Renee Bentley, and Paula Moore. Bentley had heard that Victor had sued the Village but did not know the details; neither Wenderski or Moore knew this and Bentley did not tell them. Moore, Wenederski, and Bentley unanimously agreed to recommend another candidate, Kerin Browne, for the position. Browne already worked in the Code Enforcement Department as a Customer Service Representative and was already performing some of the job duties that the Staff Assistant position would entail. They also believed she had the best interview. Norris approved offering the position to Browne, based only on the recommendation of the interviewers who selected her; he did not independently assess the candidates. Seger informed the applicants of the decision.

In addition to her use of the Village's internal grievance policy, Victor filed two administrative charges of discrimination and retaliation. She filed the first charge with the IDHR and EEOC on July 20, 2009, claiming that the reduction in her work hours was discrimination based upon age and sex and retaliation for her complaint in 2007 about a male employee's substantial pay raise.[5] The second administrative charge was filed with the EEOC on September 10, 2012. In this charge, Victor asserted that the Village unlawfully retaliated against her for

------

[5] Victor subsequently withdrew the charge that her hours were reduced based on her gender. Plt. Resp. to DSOF, Dkt. # 36, ¶ 4. The IDHR ultimately dismissed Victor's 2009 Charge for lack of substantial evidence. *Id.* Her Charge was cross-filed with the EEOC, however, and the EEOC issued a Right to Sue letter in January 2013. *Id.*; Compl. ¶ 19 (and corresponding exhibit).

filing the 2009 charge by failing to hire her for other positions with the Village, treating her with hostility, and threatening her.[6]

## **DISCUSSION**

Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015); Fed. R. Civ. P. 56(a). In ruling on the motion, the court must construe all facts and draw reasonable inferences in the light most favorable to the non-moving party. *Id.* A fact is "material" if it is one identified by the law as affecting the outcome of the case. *Sweatt*, 796 F.3d at 707 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* quoting *Anderson,* 477 U.S. at 248.

The Village argues that Victor cannot prove the essential elements of her discrimination and retaliation claims based on the record of admissible evidence and therefore cannot survive summary judgment. In response, Victor argues that issues of fact preclude judgment for the Village and that a reasonable jury could find in her favor.

### I.       **Age Discrimination**

The Village first contends that Victor cannot establish that she was reduced to a part-time position in 2008 because of her age. The ADEA makes it unlawful for an employer to discriminate against an individual "because of such individual's age." 29 U.S.C. § 623(a)(1);

_____

[6] The EEOC issued a right to sue letter based on Victor's 2012 Charge in November 2012. Compl. ¶ 18 (and corresponding exhibit).

*Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014). To survive summary judgment, a plaintiff must produce evidence from which a jury could infer that age was a but-for cause of an adverse employment action. *See Ripberger*, 773 F.3d at 880. A plaintiff may show age discrimination by using either the direct or indirect method of proof. *See Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014). Victor does not have any direct or circumstantial evidence that her age, or any proxy for age such as her pay rate or seniority, was ever an issue for her employers, so she relies on the latter method only. *See* Pl. Mem., Dkt. # 42 at 8-14. However, the appropriate standard for her *prima facie* case is in dispute: she analyzes her claim under the framework for a mini-reduction-in-force, whereas the Village contends that the ordinary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), not the mini-RIF modification, applies.

The indirect method ordinarily requires the plaintiff to make a *prima facie* showing that: (1) she is a member of a protected class; (2) she met the employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class (or, in this case, substantially younger employees, *see infra* n.2) were treated more favorably. *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 463 (7th Cir. 2014). This is the same standard that applies to a regular reduction in force (*i.e.,* layoff); when a RIF takes place but is implemented in a discriminatory fashion, the plaintiff's burden is to "show (in addition to the first two elements of the *McDonnell Douglas* claim) that she was discharged and that other, similarly situated employees who were not members of the plaintiff's protected class were treated more favorably." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000). By contrast, a mini-RIF occurs when the duties of the employee in a protected class are absorbed

by employees outside the protected class, such that she is effectively replaced (here, by a younger worker) rather than having her position eliminated altogether. *See id.* at 495. In that case, the court "swaps the fourth requirement in the basic framework—that a similarly situated younger employee was treated more favorably—with another—that her duties were absorbed by younger workers who were retained following the mini-RIF." *Filar v. Bd. of Educ.*, 526 F.3d 1054, 1060 (7th Cir. 2008); *see Merillat v. Metal Spinners, Inc.,* 470 F.3d 685, 690 (7th Cir. 2006).

As an initial matter, the Court rejects the Village's argument that the mini-RIF standard applies only in "single discharge" cases, not in cases where multiple jobs were reduced. Despite some language in prior cases to that effect, *e.g. Bellaver*, 200 F.3d at 495, the Seventh Circuit has clarified that "the number of employees let go" is not determinative; the sole question is "whether the discharged employee's duties were absorbed by an existing employee or eliminated." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 725 (7th Cir. 2008).  As to that key question, Victor says that there was a mini-RIF because some of her work was given to Granger in the years before Victor's hours were reduced and that Granger absorbed more thereafter.

There are two problems with this argument. First, the fact that some duties that Victor had once performed became Granger's in prior years, while Victor remained a full-time employee is not indicative of a mini-RIF because Victor maintains that she still had a full 40 hours of work per week to perform before her hours were reduced.  Moreover, for purposes of determining whether there was a mini-RIF, the relevant question is whether *upon the plaintiff's discharge* (or reduction, in this case) her duties were absorbed by another employee instead of

being eliminated. *See Petts*, 534, F.3d at 725. "The point of the mini-RIF, unlike a true RIF, is that the job really was not eliminated at all; because the fired employee's duties were absorbed by others, they were effectively 'replaced,' not eliminated. *Bellaver*, 200 F.3d 485, 495 (7th Cir. 2000). The inference of discrimination arises from the fact that the plaintiff was replaced by a younger worker rather than laid off, *see id.*, which is a different question than the allocation of duties among employees.

Second, the problem in assessing whether, after her reductions in hours, half of Victor's duties were wholly eliminated or absorbed by Granger is that Victor never came back to work in the HRM Department after learning her hours would be reduced. She stopped performing *all* of her job duties although she had been expected to maintain a part-time schedule. As Seger attested, and Victor does not effectively dispute, *someone* had to perform the 20 hours of work that Victor could not continue to do because of her prolonged medical absence and her subsequent transfer to Public Works. There is no way to discern whether any of her duties would have been shifted to others if Victor had accepted the reduction in hours and continued as a part-time HR Generalist. Victor maintains that they would have been, because her plate was full of non-recruiting duties when she was reduced to part-time status. But that assumes that all of the work Victor was doing at the point her hours were reduced was essential and had to be performed by someone else rather than being deferred or abandoned, and there is no evidence in the record to support that inference. Victor says she was performing "a full day's worth of work," but fails to contend with evidence submitted by the defendants showing that projects to which Victor had been assigned were put on hold and that Granger's work hours did not increase after Victor's departure. There may have been plenty of work for Victor to do as a full-time

employee, but that does not mean that the Village was not, as the evidence shows, getting by without some it because of budget shortfalls during a severe recession.

Ultimately, however, whether or not this case is viewed as a mini-RIF, Victor lacks the evidence to prove her age discrimination claim. Even assuming that Victor can establish a *prima facie* case—under the mini-RIF standard or the traditional indirect method[7]—she has adduced no evidence of pretext, and therefore a reasonable jury could not find in her favor.

Once a plaintiff makes out a *prima facie* case of age discrimination under the indirect method, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876 (7th Cir. 2002). Then the burden shifts back to the plaintiff to show pretext: *i.e.*, that the employer "offered a phony reason for the employment action." *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000); *Krchnavy*, 294 F.3d at 876. [8]

---

[7] Victor argues in the alternative that a similarly situated younger employee—Granger— was treated more favorably. Pl. Mem., Dkt. # 42 at 10. The Village argues that Granger is not similarly situated, but the Court need not resolve the issue.

[8] In addition, the Seventh Circuit has held in many cases that "pretext" is a two-pronged inquiry that also requires a showing that the employer's action was based on discriminatory animus: "Our recent Title VII cases explain that a plaintiff demonstrates pretext by showing the employer's proffered nondiscriminatory reason is a lie and the real reason is based on discriminatory intent." *Hobbs v. City of Chicago*, 573 F.3d 454, 461–62 (7th Cir. 2009) (emphasis added) (collecting cases and affirming summary judgment where plaintiff failed to prove either pretext or discriminatory animus); *see also Benuzzi v. Board of Ed. of City of Chicago*, 647 F.3d 652, 663 (7th Cir. 2011) ("To show pretext, [the plaintiff] must show not only that the [employer's] stated reasons ... were dishonest or phony, but also that the true reason was based on prohibited discriminatory animus"); *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010) ("plaintiff also must provide evidence that supports the inference that the real reason was discriminatory"). Contrary to these holdings, however, our Court of Appeals has also stated that a plaintiff is "not required to establish pretext *and* provide evidence of a discriminatory motive by the defendant" in order to survive summary judgment. *See Rudin v. Lincoln Land*

Here, the Village has consistently stated that it reduced Victor to part-time status as part of an overall cost savings strategy during a budget shortfall, specifically because it anticipated that her recruiting duties would be unnecessary during the hiring slow-down. Victor contends that this neutral reason is not "legitimate" because, according to her interpretation of Village policy, before reducing her hours the Village was required to create a rank order list taking into account the seniority and performance of all employees. "Had they done so Ms. Victor would have retained her full time hours," she says. Mem., Dkt. # 42 at 12. As noted below, this argument is perhaps relevant to pretext, but it does undermine the neutrality of the Village's reason. The Village's stated economic justification suffices to meet its "light burden," *see Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010), and shift the burden back to Victor to show that it is a pretext for discrimination.

"To show pretext, a plaintiff 'must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [the defendant's] proffered reasons that a reasonable person could find them unworthy of credence and hence infer that [the defendant] did not act for the asserted non-discriminatory reasons.'" *Bates v. City of Chicago*, 726 F.3d 951, 956 (7th Cir. 2013) (quoting *Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 792 (7th Cir. 2007)). "A plaintiff can do this by showing that the defendant's reason for the adverse employment action (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate the action." *Id*.

---

*Community Coll*., 420 F.3d 712, 725-26 (7th Cir. 2005). Even if it were possible to do so, it is not necessary to reconcile these conflicting positions in this case, because (as discussed further below) Victor has failed to create a fact issue as to the veracity of the Village's proffered reason for reducing her hours.

Although she does not believe that these reasons justified her reduction in hours, Victor does not dispute the facts that the Village suffered a budget shortfall, that reducing her hours saved the Village money, and that the Village anticipated recruiting and hiring to slow or stop. Nevertheless, she insists that her age is the real reason she was reduced to a part-time schedule.

But to support this argument, she simply proffers evidence that Village made a bad decision in reducing her hours rather than Granger's. Even if she is correct, her point is irrelevant. *Merillat*, 470 F.3d at 693 ("Metal Spinners may have made a mistake in terminating Ms. Merillat rather than Wehr during the RIF. However, such information, even if proven to be true, would not be relevant to our present inquiry."). The plaintiff must raise "a genuine issue about the honesty, not the accuracy, of [the employer's] stated reasons." *Widmar*, 772 F.3d at 465. Poor business judgment is not enough. *Ritter*, 231 F.3d at 1044 (rejecting plaintiff's argument that other duties could have been shifted to him and younger employees could have been fired instead). Indeed in another case in which the plaintiff was one of many adversely affected by economic circumstances, the Seventh Circuit has gone so far as it say it is "ridiculous" to suggest that an employer would terminate numerous employees on the pretense of economic hardship, "just so it could cover its tracks" with respect to discriminating against one employee. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 785 (7th Cir. 2004)

Because all she does is question the accuracy (*e.g.*, how much recruiting she did) or wisdom (*e.g.*, retaining Granger full-time when Victor could have taken over her duties) of the Village's reason, and not its honesty, Victor fails to provide any evidence from which it can be inferred that the Village's budget crisis and downturn in hiring was "a mask for discrimination" against her based upon her age. Victor points to no evidence that casts doubt on the veracity of

the Village's explanation that her recruiting duties were unlikely to be needed during a hiring downtown caused by the budget crisis or that some of her 40 hours' worth of work could be deferred or abandoned. It is worth noting in this regard that the Village only extended full-time employment to Victor at the beginning of 2007, about two years before the defendants concluded that her hours would have to be reduced again. Her brief tenure as a full-time employee cuts against an inference that all of her work was indispensable, while the fact that the Village first extended her to a full-time status at age 55 undermines any inference that in returning her to part-time status two years later the defendants acted because she had aged two years. *See, e.g., Ripberger,* 773 F.3d at 880-81 ("the notion that [defendant] desired to eliminate [plaintiff] because of her age is unlikely given that he had hired [plaintiff] . . . just two years before when she was 57 years old"); *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1147 (7th Cir.1994) ("It seems rather suspect to claim that the company that hired him at age 47 'had suddenly developed an aversion to older people' two years later.").

Victor further points to the fact that Granger's hours were increased in 2008 as evidence that the defendant's reasons for cutting Victor's hours were pretextual, but she fails to offer any evidence to contest the defendants' evidence that Granger's work in connection with ongoing union disputes and contract negotiations was more critical than the work that Victor was performing.[9] Victor contends that she could have done that work as well or better than Granger,

---

[9] Victor argues that the defendants' explanations for why Granger was put on full-time status are "inconsistent," but that is only because she blurs the timeline of events relating to Granger's work. The department had been seeking to put Granger on full-time status since 2007, but was not allocated the budget resources to do so until Kuhrt's retirement in 2008. At that point, Seeger opined that Granger would be able to perform Kuhrt's 20 hours of work with just

but the defendants were entitled to their contrary assessment absent evidence that would clearly establish that no reasonable person would have favored Granger over Victor. There is no such evidence here.

Nor is there authority (at least Victor cites none) for the proposition that the Village was required to make up the loss of recruiting work by shifting some of Granger's other duties to her, even if they were duties that Victor had performed before Granger. The Village was entitled to make its own judgments about how to implement its staff reduction. *See Petts*, 534 F.3d at 724 ("In deciding which employee to let go, Mr. Johnson could weigh the monetary savings of eliminating one salary with the considerations of whom the store needed more and who could be replaced more easily.").

Finally, although Victor does not specifically argue that pretext is evidenced by the Village's failure to create a rank-order list of employees before selecting whose hours to reduce, she clearly believes this to be supportive of her claim. An employer's failure to follow its own internal employment procedures can constitute evidence of pretext. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005). Here, however, Victor does not show that the Village violated its policy. The relevant policy states: "In the event it becomes necessary to layoff employees in a Department, HRM shall with the Director, prepare a rank order list of employees for layoff." In this case, Seger and Norris testified that no list was necessary because there was no "layoff" in the HRM department and Victor was to continue working there. Victor interprets

---

10 additional hours per week, resulting in a net savings to the Village from increasing Granger's hours instead of replacing Kurht with another part-time employee. That says nothing, however, about why Granger's hours were not cut in 2009; it is undisputed that at that time, Granger was heavily engaged in work relating to the union contract negotiations.

the ranking requirement also to apply to every other kind of "reduction," but her own subjective interpretation of the policy does not undermine the sincerity of the Village's. Victor does not attempt to show, for example, that the Village created rank-order lists when reducing the hours of other employees or when implementing any staff reduction other than a layoff. Absent some indication that the Village applied its policy differently to Victor than to others, there is no reasonable inference of discriminatory intent that can be drawn from the Village's failure to follow Victor's interpretation of its layoff policy. Having failed to adduce any evidence that the Village did not act out of economic concerns, Victor cannot establish age discrimination.

## II.    Retaliation

Next, the Village contends that Victor's retaliation claim cannot succeed because she failed to exhaust her administrative remedies and lacks evidence that the adverse actions she cites were causally linked to her protected activity. A plaintiff can use the direct or indirect method to prove retaliation. Here, Victor invokes both. To establish retaliation under the direct method, a plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012). Victor unquestionably engaged in protected activity when she filed two administrative charges of discrimination and retaliation; she also filed numerous internal grievances about discrimination or harassment.

Whether Victor suffered an adverse employment action after her protected activity is less clear because Victor speaks in generalities rather than identifying specific adverse actions that she attributes to the filing of discrimination charges. She simply lists "a variety of ways" the Village supposedly retaliated over an undefined period of time, including "hostile treatment, less

favorable evaluations, and non-selection for various positions" as well as "management decid[ing] to threaten Ms. Victor for her continuing complaints," and the formal reprimand Victor received for an unfounded harassment complaint. Mem., Dkt. # 42 at 16.

The acts proscribed by the anti-retaliation statute are not limited to those that affect the terms and conditions of one's employment. *Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007); *see Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."). Still, an adverse employment action for purposes of a retaliation claim must be "materially" adverse: that is, sufficient to dissuade a reasonable worker from complaining of discrimination. *Id*.; *see Henry v. Milwaukee Cty.*, 539 F.3d 573, 586 (7th Cir. 2008). As the Seventh Circuit has frequently stated, "[n]ot everything that makes an employee unhappy is an actionable adverse action." *Stephens v. Erickson,* 569 F.3d 779, 790 (7th Cir. 2009) (internal brackets omitted).

"Less favorable evaluations" are generally not materially adverse actions, *see Langenbach v. Wal-Mart Stores, Inc*., 761 F.3d 792, 799 (7th Cir. 2014), and in any case, Victor fails to develop her argument or cite to any evidence relating to less favorable performance evaluations; indeed, she submits only the favorable reviews she received through the 2008 performance year, not any unfavorable reviews she received later on. And the "threats"— warnings that baseless[10] grievances violate Village policy—also are not actionable. A warning of

_____

[10] To constitute protected activity, a claim or charge relating to a discriminatory activity "must be based on a good-faith and reasonable belief that [the plaintiff] is opposing unlawful conduct." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011) (rejecting claim

20

potential disciplinary action for violating Village policy does not rise to the level of a written reprimand, but even such reprimands—another action about which Victor complains—are not considered materially adverse. In *Chaib v. Indiana*, 744 F.3d 974, 987 (7th Cir. 2014), for example, the Seventh Circuit held that "a reprimand without more is not an adverse employment action," and affirmed a grant of summary judgment against a plaintiff who had received a formal reprimand for threatening to file sexual harassment charges against co-workers that were determined by the employer after investigation to be unwarranted. *See also, e.g., Whittaker v. N. Ill. Univ.,* 424 F.3d 640, 648 (7th Cir. 2005) (negative evaluations, written warnings, and requirement to verify sick leave held not to constitute material adverse retaliation); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) (warnings to employee not to discuss discrimination complaint with co-workers held not to constitute material adverse retaliation). Finally, Victor does not cite evidence of "hostile treatment" that is egregious enough to constitute a materially adverse action; she simply describes isolated instances of what she considered rudeness from various Village personnel who investigated her grievances or interviewed her for other positions. Even being yelled at is not "actionable harm." *Stephens*, 569 F.3d at 790; *see Cain v. Locke*, 483 F. App'x 276, 281 (7th Cir. 2012) (explaining that "the fact that her supervisors may have been rude or intimidating does not elevate these incidents to the

---

of retaliation arising from report of sexual harassment where plaintiff could not have reasonably believed that the conduct at issue constituted sexual harassment). *See also Mattson v. Caterpillar, Inc.,* 359 F.3d 885, 891 (7th Cir. 2004) (baseless claims do not constitute protected conduct). The defendants maintain that Victor's grievances were not made in good faith, but given the absence of any material adverse action in response to her grievances, it is not necessary to dissect each of her complaints to analyze their bona fides. For purposes of this motion the Court assumes that Victor's complaints and grievances were made in good faith.

level of materially adverse actions"). Moreover, "problematic hostility" must be linked to protected activity in order to be actionable as retaliation. *Hutt*, 757 F.3d at 694. As noted below, no such link has been established here.

Thus, the only possible materially adverse retaliatory action that Victor raises is the failure to hire her for full-time positions. *Cf. Stephens*, 569 F.3d at 787 ("the retaliatory denial of a promotion is a materially adverse action"). Victor refers generally to "a variety of positions to which she applied" but was not assigned. *E.g.*, Mem., Dkt. # 42 at 17. The only failure-to-hire that Victor elects to pursue after discovery, however, relates to the full-time Administrative Staff Assistant in the Code Enforcement / Water Billing Department. *See, e.g.*, Pl. Mem., Dkt. # 42 at 18; Pl. Local Rule 56.1 Resp., Dkt. # 36 ¶¶ 70, 72. Victor applied for that position on December 21, 2012, and was informed that she did not get it on January 23, 2013.

The Village first argues that Victor failed to exhaust her administrative remedies as to this alleged instance of retaliation because both of the administrative charges she filed preceded her application for the Code Enforcement position, and she never amended her earlier charges or filed a separate charge regarding this failure to hire. The argument—which Victor does not bother to address— is not well-taken. To challenge an employment practice under Title VII, the employee must file a charge with the Equal Employment Opportunity Commission or parallel state agency, within 180 or 300 days of the challenge action, depending on whether the charge was filed first with a state agency with authority to address the charge (300 days) or directly with the EEOC (180 days). 42 U.S.C. § 2000e–5(e)(1); *Jackson v. City of Chicago*, 552 F.3d 619, 623 (7th Cir. 2009). Each discrete act of discrimination or retaliation starts a new clock for filing an administrative charge. *See Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014);

*Jackson*, 552 F.3d at 623 ("refusal to hire" and "failure to promote" among discrete adverse actions).

Nevertheless, Victor was not required to file a separate charge about acts that she alleges were retaliation for the prior filing of an EEOC charge. The Seventh Circuit follows the rule that a separate administrative charge is not a prerequisite to a lawsuit complaining about retaliation for filing an earlier charge; in other words, a retaliation claim can be raised for the first time in a federal lawsuit. *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 482-83 (7th Cir. 1996); *see Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) ("We have held for practical reasons, to avoid futile procedural technicalities and endless loops of charge/retaliation/charge/retaliation, etc., that a plaintiff who alleges retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation.").[11] Moreover, Victor filed many internal grievances complaining about harassment, discrimination, and/or retaliation; as even an "informal complaint" can constitute protected activity, these formal grievances surely qualify as protected activity for which retaliation might occur. *See Davis v.*

---

[11] There is, however, a circuit split on this question, fueled by the Supreme Court's opinion in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), where the Court held that the filing of an administrative claim is mandatory for each discrete violation. *Id.* at 113. *Compare Jones v. Calvert Grp., Ltd.,* 551 F.3d 297, 303 (4th Cir. 2009) (holding that the exception was not abrogated); *Delisle v. Brimfield Twp. Police Dep't,* 94 F. App'x 247, 252–54 (6th Cir.2004) (same), *with Martinez v. Potter,* 347 F.3d 1208, 1210–11 (10th Cir. 2003) (holding that the exception was abrogated by *Morgan*); *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012) ("We reject Richter's contention that retaliation claims arising from a charge filed with the EEOC are excepted from the statutory exhaustion requirement."). The Seventh Circuit, however, continues to treat the exhaustion exception as viable, though it has not addressed the question in light of *Morgan.*

*Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 674 (7th Cir. 2011). The timing of the administrative charges therefore does not doom Victor's retaliation claim.

Nevertheless, the Village's alternate argument—that Victor has utterly failed to link her protected activity with the failure to hire her for the Code Enforcement position—has merit. The "causal link" element of a retaliation claim requires evidence of but-for causation. *Reynolds v. Tangherlini,* 737 F.3d 1093, 1104 (7th Cir. 2013) ("[R]etaliation claims under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation."). In rare cases this is the employer's admission of discriminatory evidence, but more frequently causation is established through circumstantial evidence from which intentional discrimination can be inferred. *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015). "Such circumstantial evidence may include suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Id*.

Victor presents no such direct or circumstantial evidence as to the failure to hire her for the Code Enforcement position. She does not dispute that two of the three relevant decision makers[12] were not aware of her lawsuit and that the third knew only that Victor had sued the Village but had no knowledge of the claims asserted, and she cites no evidence that any of the three was aware of any other protected activity. *See Tomanovich v. City of Indianapolis*, 457

---

[12] Victor does speculate that someone else, a Mark Koplin, was really responsible for the decision, but she cites no evidence that supports her claim. The evidence she does cite, an email from Koplin one year before Victor applied for the Code Enforcement position, does not pertain to that job. Victor does not effectively dispute the evidence that the panel of three interviewers was exclusively responsible for selecting the applicant to hire.

F.3d 656, 668 (7th Cir. 2006) (employer's actual knowledge of complaints required for its decisions to be retaliatory). She does not even argue that any hiring decision was suspiciously timed to her internal grievances or her lawsuit. In short, she fails altogether to develop any causal link between the failure to hire and her protected activity. *See Chaib*, 744 F.3d at 987 (summary judgment proper on retaliation claim because "none of the adverse employment actions identified by plaintiff—the alleged failure to train, the denial of her transfer to CIF, and the poor performance review—have been tied to those complaints [of discrimination] in any way."); *Silverman v. Bd. of Educ.*, 637 F.3d 729, 741 (7th Cir. 2011) (failure to establish causal connection precluded retaliation claim).

Victor fares no better under the indirect method. To establish a *prima facie* case, with respect to a failure to hire or promote her, she must show that she engaged in protected activity, that she applied for and was qualified for the position, that she was not hired, and that an individual no more qualified than she, who did not file an EEOC charge, was hired instead. *Burks v. Union Pac. R. Co.*, 793 F.3d 694, 700 (7th Cir. 2015). The burden then shifts to the Village to provide legitimate, nondiscriminatory reason for failing to hire her; if it does so, the burden returns to Victor to establish that the reason is pretext for unlawful retaliation against her. *See id*. The Village does not challenge Victor's *prima facie* case at this stage, *see* Def. Mem., Dkt. # 31 at 12-13, focusing instead on the Victor's inability to establish that the three interviewers who rejected her had actual knowledge of any protected activity. Indeed, this precludes her success under the indirect method as well as the direct method. *Tomonaovich*, 457 F.3d at 669; *Stephens*, 569 F.3d at 788 (lack of evidence that interviewers knew of protected activity "alone dooms [plaintiff's] claims").

The Village further contends that Victor has no evidence that the stated reason she was not selected for the Code Enforcement position was a pretext for retaliatory animus. Here, the decision-makers explained that they selected Kerin Browne, already a Customer Service Representative in the Code Enforcement Department, for the position of Administrative Staff Assistant. In their estimation, she was better qualified because she was already performing many of the job duties that were also required in the new position, including staffing the department's front counter, processing building permits, and addressing residents' questions about water billing. Victor's only response to this point is: "Defendant claims Ms. Victor was less qualified but the record does not support such a claim. Ms. Victor appears to be as qualified, if not more qualified, than the person who was selected." Mem., Dkt. # 41 at 18.

Victor's argument is insufficient to save the retaliation claim. In *Millbrook v. IBP, Inc.*, the Seventh Circuit joined a number of others in holding: "[W]here an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext 'unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.'" 280 F.3d 1169, 1180 (7th Cir. 2002) (quoting *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999)); *see Cichon*, 401 F.3d at 813. Indeed, for disparate qualifications to be evidence of pretext, the plaintiff's credentials have to be so superior that no reasonable person could have impartially chosen the other candidate over the plaintiff. *Millbrook*, 280 F.3d at 1180-81.

Victor's cursory argument does not bring her close to meeting this burden. Moreover, Victor's assessment of her superior qualifications rests largely on the fact that she scored better than Brown on several skills tests, such as typing, data entry, and software competency. But this does not answer or refute the Village's stated reason for hiring Browne, namely, that she was already part of the Code Enforcement Department and already performing well at some of the very tasks the new Staff Assistant would be assigned. The truth of this reason is not called into question by the fact that Victor could type faster. Nor is it undermined by Victor's longer tenure with the Village; she still had no direct experience with the Code Enforcement Department, in contrast to Browne. "Subjective evaluations of each candidate are entirely consistent with Title VII." *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010). Victor's "self-serving appraisals" and her own subjective belief that she was as qualified as the successful applicant are insufficient to permit an inference of retaliation. *Stephens*, 569 F.3d at 788. Therefore, Victor fails to raise any issue of fact regarding the sincerity of the reason given for not hiring her as the Administrative Staff Assistant.

\*       \*       \*

Because Victor has not adduced evidence based on which a reasonable jury could conclude that she was subjected to age discrimination or retaliation for protected activity, the Village's motion for summary judgment is granted.

Date: January 20, 2016

John J. Tharp, Jr.
United States District Judge

27